TROY LAW, PLLC
41-25 Kissena Boulevard
Suite 103
Flushing, NY 11355
(718) 762-1324
troylaw@troypllc.com
*Attorneys for Plaintiff and propoesd Collective and Class*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

------------------------------------------------------------------x
JOE CHIEN,
*on behalf of himself and others similarly situated,*
　　　　　　　　　　　　　　　　　　Plaintiff,

　　　　　　　　v.

WAN FU YUAN, INC.
　　d/b/a Hunan Taste,
FBGM INC.
　　d/b/a Hunan Taste,
MEI LI HSIUNG, administrator of the Estate of Joseph
　　Hsiung
　　　a/k/a Mei-Li Hsiung
　　　a/k/a Mei-Li Hsuing
　　　a/k/a Mary Hsuing,
MEI LI HSIUNG
　　　a/k/a Mei-Li Hsiung
　　　a/k/a Mei-Li Hsuing
　　　a/k/a Mary Hsuing, and
DAVID HSIUNG,
　　　　　　　　　　　　　　　　　　Defendants.
------------------------------------------------------------------x

Case No. 22-cv-05527

**FLSA COLLECTIVE ACTION**
**& RULE 23 CLASS ACTION**

<u>**COMPLAINT**</u>

**JURY TRIAL DEMANDED**

　　　　Plaintiff JOE CHIEN (hereinafter referred to as "Plaintiff" or "Joe"), on behalf of himself and others similarly situated, by and through his attorney, Troy Law, PLLC, hereby brings this complaint against Defendants WAN FU YUAN, INC. d/b/a Hunan Taste, FBGM INC. d/b/a Hunan Taste (hereinafter collectively with WAN FU YUAN, INC. d/b/a Hunan Taste, "Corporate Defendants"), MEI LI HSIUNG, as a defendant in her own right and as administrator of the Estate of Joseph Hsiung a/k/a Mei-Li Hsiung a/k/a Mei-Li Hsuing a/k/a Mary Hsuing (hereinafter "Mei

Li"), and DAVID HSIUNG (hereinafter "David") (hereinafter collectively with Hai, Mei Li, and Tse-Hai, "Individual Defendants") (Individual Defendants hereinafter collectively with Corporate Defendants, "Defendants"), and alleges as follows:

## INTRODUCTION

1. Joe brings this action on behalf of himself and others similarly situated employees against Defendants for violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.,* and New Jersey Wage and Hour Law ("NJWHL"), NJSA § 34:11-56 *et seq.*, arising from Defendants' various willful and unlawful employment policies, patterns and practices.

2. Joe alleges under the FLSA that he is entitled to recover from Defendants: (1) unpaid overtime wages, (2) liquidated damages, (3) post-judgment interest, and (4) attorneys' fees and costs.

3. Joe alleges under the NJWHL that he is entitled to recover from Defendants: (1) unpaid overtime wages, (2) liquidated damages, (3) pre-judgment and post-judgment interest and (4) attorneys' fees and costs.

## JURISDICTION AND VENUE

4. This Court has subject-matter jurisdiction over this controversy under Section 216(b) of the FLSA and Section 1331 of Title 28 of the United States Code.

5. This Court has supplemental jurisdiction over Joe's state-law claims under Section 1367, Subsection (a) of Title 28 of the United States Code.

6. Venue is proper in the United States District Court for the District of New Jersey pursuant to Section 1391, Subsections (b) and (c) of Title 28 of the United States Code, because Defendants conduct business in the State of New Jersey, and the acts and omissions giving rise to the claims alleged herein took place within the District of New Jersey.

## PLAINTIFF

7. Joe was employed by Defendants at all times within the applicable statutes of limitations between about May 5, 2013 and about June 27, 2020, to work as a "fry wok" (*i.e.*, a stir-fry cook) at Defendants' restaurants, located at 67 Bloomfield Avenue, Denville NJ, 07834 and 4 Alvin Place, Montclair NJ, 07043, both known as "Hunan Taste."

8. From about May 5, 2013 through about June 30, 2018, Joe worked at 67 Bloomfield Avenue Denville NJ, 07834 (hereinafter "Hunan Taste Denville").

9. From about July 1, 2018 through about June 27, 2020, Joe worked at 4 Alvin Place, Montclair NJ, 07043 (hereinafter "Hunan Taste Montclair").

## DEFENDANTS

### *Corporate Defendants*

10. WAN FU YUAN, INC. d/b/a Hunan Taste was, throughout the period relevant to this lawsuit, and remains, a domestic business corporation with a registered address and principal place of business at 67 Bloomfield Avenue Denville NJ, 07834.

11. WAN FU YUAN, INC. d/b/a Hunan Taste was, throughout the period relevant to this lawsuit, a business with a gross annual revenue in excess of $500,000.00 per year. Manta estimates that its gross revenue at 67 Bloomfield Avenue Denville NJ, 07834 is approximately $1.3 million, and that it employs a staff of approximately 30 employees at any one time.

12. WAN FU YUAN, INC. d/b/a Hunan Taste was, throughout the period relevant to this lawsuit, a business engaged in interestate or foreign commerce. For instance, in addition to its employees, including Joe, using ingredients and kitchen cleaning supplies moved in commerce, on or about August 23, 2019, WAN FU YUAN, INC. d/b/a Hunan Taste purchased decorating materials and household ware from a supplier in Taiwan for use at Hunan Taste Denville.

13. FBGM INC. d/b/a Hunan Taste was, throughout the period relevant to this lawsuit, and remains, a domestic business coporation with a registered address at 67 Bloomfield Avenue

Denville NJ, 07834 and a pricipal place of business located at 4 Alvin Place Montclair NJ, 07043.

14. FBGM INC. d/b/a Hunan Taste was, throughout the period relevant to this lawsuit, a business with a gross annual revenue in excess of $500,000.00 per year. On or about May 13, 2020, FBGM INC. d/b/a Hunan Taste received a Paycheck Protection Program loan from the Small business administration in the amount of $143,905.00 to retain 28 jobs.

15. FBGM INC. d/b/a Hunan Taste was, throughout the period relevant to this lawsuit, a business engaged in interestate or foreign commerce. Its employees, including Joe, used ingredients and kitchen cleaning supplies moved in commerce.

16. Throughout the period relevant to this lawsuit, WAN FU YUAN, INC. d/b/a Hunan Taste and FBGM INC. d/b/a Hunan Taste operated "Hunan Taste" as a single integrated enterprise.

17. WAN FU YUAN, INC. d/b/a Hunan Taste and FBGM INC. d/b/a Hunan Taste share a registered address at 67 Bloomfield Avenue Denville NJ, 07834, the premises of Hunan Taste Denville.

18. WAN FU YUAN, INC. d/b/a Hunan Taste and FBGM INC. d/b/a Hunan Taste were both owned by Joseph Hsiung a/k/a Chih Lih Hsiung and Mei Li.

19. Joseph Hsiung a/k/a Chih Lih Hsiung was the President of WAN FU YUAN, INC. d/b/a Hunan Taste and FBGM INC. d/b/a Hunan Taste and exercised operational control over both entities.

20. Mei Li was the Treasurer of WAN FU YUAN, INC. d/b/a Hunan Taste and FBGM INC. d/b/a Hunan Taste and exercised financial control over both entities.

21. Hunan Taste Denville and Hunan Taste Montclair were both managed on a day-to-day basis by Joseph Hsiung a/k/a Chih Lih Hsiung and Mei Li.

22. Employees, including Joe, were transferred between Hunan Taste Denville and

Hunan Taste Montclair, and vice versa, based on need.

23. Hunan Taste Denville and Hunan Taste Montclair employees were housed in a single employee dormitory, at 1366 Tabor Road, Parsippany, NJ 07878.

24. Hunan Taste Denville and Hunan Taste Montclair share a single website, hunantaste.com, which holds out the Hunan Taste Denville as its first location opened in 1896 and Hunan Taste Montclair as its "second location" opened in 2016 and states that their respective menus are "from the same thoughtfully crafted recipes." Indeed their menus, which are both on the same website, are near-identical.

*Individual Defendants*

25. Joseph Hsiung a/k/a Chih Lih Hsiung was, throughout the period relevant to this lawsuit up until about April 2020, when he died, a shareholder and the President of WAN FU YUAN, INC. d/b/a Hunan Taste and FBGM INC. d/b/a Hunan Taste as well as the President of Jennie Realty Corp. which was the owner of Hunan Taste Denville's premises at 67 Bloomfield Avenue Denville NJ, 07834.

26. Joseph Hsiung a/k/a Chih Lih Hsiung was, throughout the period relevant to this lawsuit, an owner of the employee dormitory at 1366 Tabor Road, Parsippany, NJ 07878.

27. Throughout the period relevant to this lawsuit until about April 2020, Joseph Hsiung a/k/a Chih Lih Hsiung possessed the power to hire, fire, and supervised, controlled, and assigned employees. On or about July 1, 2018, Joseph Hsiung a/k/a Chih Lih Hsiung transferred Joe from Hunan Taste Denville to Hunan Taste Montclair, to replace a departing cook.

28. Throughout the period relevant to this lawsuit until about April 2020, Joseph Hsiung a/k/a Chih Lih Hsiung gave Joe his pay, partially by check and partially in cash. Joseph Hsiung a/k/a Chih Lih Hsiung determined employee rates of pay, including Joe's. Joseph Hsiung a/k/a Chih Lih Hsiung kept records of employees' pay, including Joe's.

29. Joseph Hsiung a/k/a Chih Lih Hsiung acted willfully, intentionally, and maliciously and is an employer within the meaning of the FLSA and NJWHL and his estate is jointly and severally liable for with WAN FU YUAN, INC. d/b/a Hunan Taste and FBGM INC. d/b/a Hunan Taste.

30. Mei Li was Joseph Hsiung a/k/a Chih Lih Hsiung's wife and upon information and belief is the administrator of his estate.

31. Mei Li was, throughout the period relevant to this lawsuit, a shareholder and the Treasurer of WAN FU YUAN, INC. d/b/a Hunan Taste and FBGM INC. d/b/a Hunan Taste and kept the financial books and records of WAN FU YUAN, INC. d/b/a Hunan Taste and FBGM INC. d/b/a Hunan Taste, including records of inventory ordered and of employee pay, as expenses.

32. Mei Li was, throughout the period relevant to this lawsuit, an active day-to-day manager at both Hunan Taste Denville and Hunan Taste Montclair, splitting her time between both locations, where she supervised employees, including Joe.

33. Mei Li was, throughout the period relevant to this lawsuit, an owner of the employee dormitory at 1366 Tabor Road, Parsippany, NJ 07878.

34. Mei Li, throughout the period relevant to this lawsuit, had the power to hire and fire employees of Hunan Taste Denville and Hunan Taste Montclair, including Joe; determined the schedules and conditions of employment at Hunan Taste Denville and Hunan Taste Montclair; and determined the rates of pay for employees of Hunan Taste Denville and Hunan Taste Montclair.

35. Mei Li acted willfully, intentionally, and maliciously and is an employer within the meaning of the FLSA and NJWHL and his estate is jointly and severally liable for with WAN FU YUAN, INC. d/b/a Hunan Taste and FBGM INC. d/b/a Hunan Taste.

36. David is the son of Joseph Hsiung a/k/a Chih Lih Hsiung and Mei Li.

37. David was, throughout the period relevant to this lawsuit, an active day-to-day manager at both Hunan Taste Denville and Hunan Taste Montclair, splitting his time between both locations, where he supervised employees, including Joe.

38. From about July 1, 2018 through the end of Joe's employment, from time to time David would give Joe his pay, and kept records of pay when he did so. On October 25, 2019, at least, David signed Joe's paycheck.

39. David, throughout the period relevant to this lawsuit, had the power to hire and fire employees of Hunan Taste Denville and Hunan Taste Montclair, including Joe; determined the schedules and conditions of employment at Hunan Taste Denville and Hunan Taste Montclair; and determined the rates of pay for employees of Hunan Taste Denville and Hunan Taste Montclair.

40. David acted willfully, intentionally, and maliciously and is an employer within the meaning of the FLSA and NJWHL and his estate is jointly and severally liable for with WAN FU YUAN, INC. d/b/a Hunan Taste and FBGM INC. d/b/a Hunan Taste.

## STATEMENT OF FACTS

41. Joe was employed by Defendants as a fry wok from on or about May 5, 2013 through on or about June 27, 2020. Joe worked first at the Hunan Taste Denville from on or about May 5, 2013 through on or about June 30, 2018 and then Hunan Taste Montclair from on or about July 1, 2018 through on or about June 27, 2020.

42. During Joe's time at Hunan Taste Denville between on or about May 5, 2013 and on or about June 30, 2018, he regularly worked about sixty-nine and three quarter (69.75) hours per week:

    a. Cooking in the restaurant sixty-eight (68) hours per week:

        i. from about 11:00 hours (11:00 am) through about 22:00 hours

(10:00 pm) two out of Monday, Tuesday, and Wednesday each week (with the remaining day off);

    ii.    from about 11:00 hours (11:00 am) through about 22:00 hours (10:00 pm) each Thursday;

    iii.    from about 11:00 hours (11:00 am) through about 23:00 hours (11:00 pm) each Friday and Saturday; and

    iv.    from about 11:00 hours (11:00 am) through about 22:00 hours (10:00 pm) each Sunday.

    b.    Driving himself and other employees to and from the company dormitory in a company van one hour and forty-five minutes (1.75 hours) per week:

    i.    for about fifteen (15) minutes per trip, three (3) or four (4) (on average three and one-half (3.5) days per week.

43.    During Joe's time at Hunan Taste Montclair between on or about July 1, 2018 and on or about June 27, 2020, he regularly worked about seventy-one (71) hours per week, about three (3) out of every four (4) weeks:

    a.    driving other employees from the dormitory to the restaurant in the company van from about 10:45 hours (10:45 am) through about 11:00 hours (11:00 am), then cooking in the restaurant from about 11:00 hours through about 22:00 hours (10:00 pm), then driving other employees from the restaurant to the dormitory in the company van from about 22:00 hours (10:00 pm) through about 22:15 hours (10:15 pm), one out of Monday and Tuesday each week (with the remaining day off);

    b.    driving other employees from the dormitory to the restaurant in the company van from about 10:45 hours (10:45 am) through about 11:00 hours (11:00 am),

then cooking in the restaurant from about 11:00 hours through about 22:00 hours (10:00 pm), then driving other employees from the restaurant to the dormitory in the company van from about 22:00 hours (10:00 pm) through about 22:15 hours (10:15 pm), each Wednesday and Thursday;

   c.   driving other employees from the dormitory to the restaurant in the company van from about 10:45 hours (10:45 am) through about 11:00 hours (11:00 am), then cooking in the restaurant from about 11:00 hours through about 23:00 hours (11:00 pm), then driving other employees from the restaurant to the dormitory in the company van from about 23:00 hours (11:00 pm) through about 23:15 hours (11:15 pm), each Friday and Saturday; and

   d.   driving other employees from the dormitory to the restaurant in the company van from about 10:45 hours (10:45 am) through about 11:00 hours (11:00 am), then cooking in the restaurant from about 11:00 hours through about 22:00 hours (10:00 pm), then driving other employees from the restaurant to the dormitory in the company van from about 22:00 hours (10:00 pm) through about 22:15 hours (10:15 pm), each Sunday.

   44.   During Joe's time at Hunan Taste Montclair between on or about July 1, 2018 and on or about June 27, 2020, he regularly worked about fifty-nine hours and 30 minutes (59.50 hours) per week, about one (1) out of every four (4) weeks:

   a.   driving other employees from the dormitory to the restaurant in the company van from about 10:45 hours (10:45 am) through about 11:00 hours (11:00 am), then cooking in the restaurant from about 11:00 hours through about 22:00 hours (10:00 pm), then driving other employees from the restaurant to the dormitory in the company van from about 22:00 hours (10:00 pm) through about 22:15 hours (10:15 pm), each Monday

and Thursday;

b. driving other employees from the dormitory to the restaurant in the company van from about 10:45 hours (10:45 am) through about 11:00 hours (11:00 am), then cooking in the restaurant from about 11:00 hours through about 23:00 hours (11:00 pm), then driving other employees from the restaurant to the dormitory in the company van from about 23:00 hours (11:00 pm) through about 23:15 hours (11:15 pm), each Friday and Saturday; and

c. driving other employees from the dormitory to the restaurant in the company van from about 10:45 hours (10:45 am) through about 11:00 hours (11:00 am), then cooking in the restaurant from about 11:00 hours through about 22:00 hours (10:00 pm), then driving other employees from the restaurant to the dormitory in the company van from about 22:00 hours (10:00 pm) through about 22:15 hours (10:15 pm), each Sunday.

45. Joe did not have any regularly scheduled meal or rest breaks during the working day, and was not wholly relieved from work at any time during the day to rest or eat. If a customer's order came while he wasn't working, he would have to stop what she was doing and cook the customer's order.

46. Joe was initially referred to Hunan Taste Denville by an employment agency. The employment agent told him he would be working six (6) days per week for two thousand six hundred dollars ($2,600.00) per month, and would be provided lodging.

47. From the beginning of the period relevant to this lawsuit, through about September 24, 2016, Joe was paid a flat one hundred and fifty dollars ($150.00) per day.

48. From about September 25, 2016 through about June 30, 2018, Joe was paid a flat one hundred and sixty dollars ($160.00) per day.

49. From about July 1, 2018 through the end of Joe's employment on June 27, 2020 he was paid a flat one hundred and seventy dollars ($170.00) per day.

50. Joe was paid partially by cash and partially by check (with "FBGM Inc." as the payor), given to him usually by Joseph Hsiung a/k/a Chih Lih Hsiung and after about July 1, 2018 through the end of Joe's employment from time to time by Joseph Hsiung a/k/a Chih Lih Hsiung and from time to time by David.

51. In addition to his salary, Joe received employer-provided lodging for the employer's convenience. The dormitory housed about ten (10) people at a time. Upon information and belief, the value of the lodging provided for the whole dormitory was between about one thousand five hundred dollars ($1,500.00) and one thousand seven hundred dollars ($1,700.00) per month, on average one thousand six hundred dollars ($1,600.00) per month; or, on average, one hundred sixty thousand dollars ($160.00) per employee per month.

52. Joe's base salary did not include pay for any hours worked in a week beyond the fortieth (40th) hour each week.

53. Defendants committed the foregoing acts knowingly, willfully and maliciously, against Joe, the collective and the class.

## COLLECTIVE ALLEGATIONS

54. Joe brings his FLSA claims individually and on behalf of other current and former non-exempt workers employed by Defendants over the three years preceding the filing of this Complaint, through the entry of judgement in this case (the "Collective").

## CLASS ALLEGATIONS

55. Plaintiff brings his NJWHL claims pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of all non-exempt personnel employed by Defendants on or after the date that is six years before the filing of the Complaint in this case as defined herein (the "Class

Period").

56. All said persons, including Plaintiff, are referred to herein as the "Class."

57. The Class members are readily ascertainable. The number and identity of the Class members are determinable from the records of Defendants. The hours assigned and worked, the positions held, and the rate of pay for each Class Member is also determinable from Defendants' records. For purpose of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under said Fed. R. Civ. P. 23.

*Numerosity*

58. The proposed Class is so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown, and the facts on which the calculation of the number is presently within the sole control of the Defendants, upon information and belief, there are more than forty (40) members of the class.

*Commonality*

59. There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

    a. Whether Defendant employed Plaintiff and the Class within the meaning of the NJWHL;

    b. Whether Plaintiff and Class members are entitled to and paid overtime at one and one-half times their regular hourly wage (and whether this regular hourly wage included the value of lodging) under the NJWHL; and

    c. At what common rate, or rates subject to common method of calculation was and is Defendants required to pay the Class members for their work.

*Typicality*

60. Plaintiff's claims are typical of those claims which could be alleged by any member of the Class, and the relief sought is typical of the relief that would be sought by each member of the Class in separate actions. All the Class members were subject to the same corporate practices of Defendants, as alleged herein, of failing to pay overtime compensation. Defendants' corporate-wide policies and practices affected all Class members similarly, and Defendants benefitted from the same type of unfair and/or wrongful acts as to each Class member. Plaintiff and other Class members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

*Adequacy*

61. Plaintiff is able to fairly and adequately protect the interests of the Class and has no interests antagonistic to the Class. Plaintiff is represented by attorneys who are experienced and competent in representing plaintiffs in both class action and wage-and-hour employment litigation cases.

*Superiority*

62. A class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage-and-hour litigation where individual Class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of efforts and expenses that numerous individual actions engender. Because the losses, injuries and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class

members to redress the wrongs done to them. Further, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of Class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

63. Upon information and belief, Defendants and other employers throughout the state violate the New Jersey Wage and Hour Law. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the complaint a degree of anonymity which allows for the vindication of their rights while eliminating or reducing these risks.

## STATEMENT OF CLAIMS

### COUNT I.
**Violation of 29 U.S.C. § 207(a)(1)—Failure to Pay Overtime**
**Brought on Behalf of the Plaintiff and the Collective**

64. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

65. Section 207(a)(1) of the FLSA provides that "[e]xcept as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in

commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."

66. Throughout his employment, Joe was paid a flat salary that did not include additional pay at time-and-a-half for overtime.

67. Section 216(b) of the FLSA provides that "[a]ny employer who violates the provisions of… section 207 of this title shall be liable to the employee or employees affected in the amount of their… unpaid overtime compensation… and in an additional equal amount as liquidated damages," and further provides that "[t]he court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and the costs of the action."

68. Defendants knowingly, willfully and maliciously disregarded the provisions of the FLSA by failing to pay Joe overtime.

### COUNT II.
### Violation of NJWHL §§34:11-56a—Failure to Pay Overtime
### Brought on Behalf of the Plaintiff and the Collective

69. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

70. Section 34:11-56a4.5.b(1) of the New Jersey Statutes provides that "[a]n employer shall [] pay each employee not less than 1 1/2 times such employee's regular hourly rate for each hour of working time in excess of 40 hours in any week."

71. Throughout his employment, Joe was paid a flat salary that did not include additional pay at time-and-a-half for overtime.

72. Section 34:11-56a25.26 of the New Jersey Statutes provides that "[i]f any employee

is paid by an employer less than the minimum fair wage to which the employee is entitled under the provisions of P.L.1966, c.113 (C.34:11-56a *et seq.*)…, the employee may recover in a civil action the full amount of that minimum wage less any amount actually paid to him or her by the employer…, and an additional amount equal to not more than 200 percent of the amount of the unpaid minimum wage [] as liquidated damages, plus costs and reasonable attorney's fees as determined by the court."

73.     Defendants knowingly, willfully and maliciously disregarded the provisions of the NJWHL by failing to pay Joe overtime.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself, and on the behalf of Collective and Class Members, respectfully requests that this Court enter a judgment providing the following relief:

A.     At the earliest practicable time giving notice of this collective action, or authorizing Plaintiff to give notice of this collective action, to all persons who are presently, or have up through the extent allowable under the statute of limitations and including the date of the notice's issuance, been employed by Defendants as non-exempt workers. Such notice shall inform such employees that this lawsuit has been filed, of the nature of this lawsuit, and of their right to join this lawsuit if they believe they were denied minimum wage or overtime pay;

B.     A declaratory judgment that the practices complained of herein are unlawful under FLSA and NJWHL;

C.     An injunction against Corporate Defendants, their owners, officers, agents, successors, employees, representatives, and any and all persons acting in concert with them as provided by law, including but not limited to the Individual Defendants, from engaging in each of the unlawful practices and policies set forth herein;

D. An award of unpaid overtime, and liquidated damages equal to unpaid overtime, due to Plaintiff and any opt-ins under FLSA;

E. An award of unpaid overtime, and liquidated damages equal to two times the unpaid overtime, due to Plaintiff and the Class under NJWHL;

F. An award of pre-judgment interest on damages under the NJWHL at the rate set forth by Rule 4:42-11(b) of the Rules Governing the Courts of the State of New Jersey;

G. An award of post-judgment interest on damages under the NJWHL at the rate set forth by Rule 4:42-11(a)(ii) of the Rules Governing the Courts of the State of New Jersey;

H. An award of reasonable attorneys' fees and costs; and

I. Any such other and further legal or equitable relief as the Court may deem necessary, just, and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) and 38(c) of the Federal Rules of Civil Procedures, Plaintiff demands a trial by jury on all questions of facts.

Dated: September 13, 2022
Flushing, New York

                                          TROY LAW, PLLC
*Attorneys for Plaintiff and propoesd Collective and Class*

                                        /s/ Aaron B. Schweitzer
Aaron B. Schweitzer
41-25 Kissena Boulevard
Suite 103
Flushing, NY 11355
(718) 762-1324
troylaw@troypllc.com